## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TINA H.,[1]

Plaintiff,

v.

FRANK BISIGNANO,[2]
Defendant.

CIVIL ACTION NO. 1:24-cv-00471

(Magistrate Judge Latella)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act

and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the

Commissioner of Social Security (hereinafter, "the Commissioner") denying

Plaintiff Tina H.'s claims for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)(1)). Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Accordingly, we have substituted him as the Defendant in this action.

1

expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be affirmed.

## I.     <u>**Background and Procedural History**</u>

On July 12, 2021, Plaintiff Tina H. filed an application for Title II benefits. (Doc. 1 at 2). In this application, Tina H. claimed disability beginning February 17, 2020, when she fell on her right shoulder after her dog pulled her down with its leash. (Tr. 22, 1131). The Social Security Administration initially denied Tina H.'s claims on January 20, 2022. (Doc. 1 at 2). Tina H. filed a request for a hearing before an Administrative Law Judge ("ALJ") on May 18, 2022. (*Id.*). ALJ Jarrod Tranguch conducted the requested hearing on November 17, 2022. (*Id.*).

In a written opinion dated February 27, 2023, the ALJ determined that Tina H. is not disabled and therefore not entitled to the benefits sought. (*Id.*). Tina H. appealed the ALJ's decision to the Appeals Council, which, on January 26, 2024, denied Tina H.'s request for review. (*Id.*). On March 19, 2024, Plaintiff filed the instant action. (Doc. 1). The Commissioner responded on April 30, 2024, and provided the requisite transcripts from the disability proceedings on the same date. (Doc. 8; Doc. 9). The parties then filed their respective briefs (Doc. 14; Doc. 18; Doc. 19), with Tina H. alleging two errors warranting reversal or remand. (Doc. 14, p. 1).

## II.    The ALJ's Decision

In a decision dated February 27, 2023, the ALJ determined that Tina H. "has not been under a disability within the meaning of the Social Security Act from February 17, 2020, through the date of this decision." (Tr. 18). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The AJL determined that Tina H. met the insured status requirements of the Social Security Act through September 30, 2025. (Tr. 19).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(B). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R § 404.1574. The ALJ determined that Tina H. "has not engaged in [SGA] since February 17, 2020, the alleged onset date." (Tr. 19). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe, or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does

not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R § 404.1520(c). If the claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found that Tina H. "has the following severe impairments: right shoulder adhesive capsulitis (status-post surgery), degenerative disc disease of the cervical spine, and cervical radiculopathy." (Tr. 19). The ALJ did not identify that Tina H. suffered from any non-severe impairments. (*Id.*).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1(20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Specifically, the ALJ considered Listings: 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s)), 1.18 (Abnormality of a Major Joint(s) in Any Extremity), and 11.14 (Peripheral Neuropathy).

4

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ here determined that Tina H.

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally push and/or pull with her non-dominant right upper extremity, such as operating levers or hand controls. The claimant can perform jobs that do not require crawling nor climbing of ladders, ropes, and scaffolding. The claimant can occasionally reach overhead with her right upper extremity and can frequently reach in other directions with her right upper extremity. The claimant can tolerate occasional exposure to vibration.

(Tr. 24). Light work is defined as work that

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors . . . .

20 C.F.R. § 404.1567(b). This generally requires the ability to stand and carry weight for approximately six hours per day. *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work mandates a determination that the claimant is not

5

disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years that was substantial gainful activity and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Tina H. is unable to perform past relevant work. (Tr. 30). The ALJ noted past relevant work as a rural mail carrier and school bus driver, but the exertional requirements of each exceeded Tina H.'s RFC. (*Id.*).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Tina H. was 38 years old on the alleged onset date, defined as a younger individual aged 18–49 by the Regulations. 20 C.F.R. § 404.1563. (Tr. 30). The ALJ also noted that Tina H. "has at least a high school education" and is able to communicate in English, as considered in 20 C.F.R. § 404.1564. (*Id.*). The ALJ determined that upon consideration of these factors, Tina H.'s RFC, and the testimony of a vocational

6

expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*). The ALJ specifically identified occupations of Marker, Mail Clerk, and Collator. (Tr. 31). As a result of this analysis, the ALJ determined that Tina H. was not disabled and denied her application for benefits. (*Id.*).

## III.    Standard of Review

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R.

§ 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008);

*Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Tina H. is disabled, but whether the Commissioner's finding that Tina H. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that

an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.    Discussion

Tina H. argues that the ALJ erred in two ways. First, she claims that substantial evidence does not support the ALJ's assessment regarding her reaching limitations. (Doc. 14, p. 1). And second, she argues that "the ALJ's multiple errors with symptom evaluation compel reversal." (*Id.*). In response, the Commissioner maintains that the ALJ, in rendering his RFC finding, properly surveyed all of the medical evidence in the record, including clinical and lab findings, treatment notes, and Plaintiff's testimony, in order to determine an appropriate restriction for the plaintiff. (Doc. 18, pp. 17–20). The Commissioner also asserts that the mere fact that the ALJ disregarded certain subjective claims made by the claimant does not mean the ALJ erred, as the ALJ was not required to accept those subjective symptoms at face value. (*Id.* at 22).

A. <u>Substantial Evidence Supports the ALJ's RFC Finding Regarding Plaintiff's Reaching Limitations.</u>

The Plaintiff argues that the ALJ did not adequately set forth his rationale for the RFC finding. (Doc. 14, p. 11). As it relates to Plaintiff's reaching limitations, the ALJ concluded that Tina H. had the RFC to perform light work, except that she can occasionally push and/or pull with her non-dominant right upper extremity, can occasionally reach overhead with her right upper extremity, and can frequently reach in other directions with her right upper extremity. (*Id.*, citing Tr. 24).

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). An RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported

11

by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

The Third Circuit instructs that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 704, 706–07 (3d Cir. 1981). Because "an ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* The ALJ need not, however, undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept

some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the

treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors are "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706–07. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

In support of Tina H.'s argument that her RFC as it relates to the reaching limitations is not supported by substantial evidence, Plaintiff correctly states that

the ALJ must, in narrative form, discuss the medical and nonmedical evidence and explain how it supports his conclusion. (Doc. 14, pp. 11–12) (citing SSR 96-8p). Plaintiff points to the following evidence in the record to support her argument that she has limitations as it relates to her right upper extremity:

> March 2020 MR arthrogram of right upper extremity showed small focal tear involving the biceps tendon. (Tr. 791) Cervical x-ray from June 2020 which showed spondylolisthesis C3-C4 through C6-C7 with motion, cervical thoracic kyphosis, and spondylosis at T4-T5 and T5-T6. (Tr. 868) June 2022 right shoulder x-ray revealed elevation of the distal clavicle in relation to the 13 acromion at the acromioclavicular joint. (Tr. 1010) October 2022 cervical MRI revealed multilevel disc degeneration with central canal and right neural foraminal stenosis at C5-6. (Tr. 1213-14) In November 2022, C6-7 epidural steroid injection was ordered. (Tr. 1215) In April 2020, Ms. [H.] underwent right shoulder injection under fluoroscopic guidance. (Tr. 774) In May 2020, Ms. [H.] underwent right shoulder arthroscopic glenohumeral debridement. (Tr. 901) Through June 2021, Ms. [H.] attended physical therapy for right shoulder pain and limited mobility, left shoulder stiffness, muscle weakness, and left shoulder pain. (Tr. 347-409, 410-713) In September 2020, Dr. Campbell administered a right shoulder cortisone injection. (Tr. 1114) In November 2020, Ms. [H.] underwent a right shoulder manipulation under anesthesia. (Tr. 711) In March 2021, Dr. Campbell administered a right shoulder cortisone injection. (Tr. 1098) In June 2021, Ms. [H.] underwent right ultrasound-guided trigger point injection at neck and upper back muscles. (Tr. 1238) In a follow-up visit with Dr. Campbell in July 2021, Ms. [H.] reported that the trigger point injections did not help and instead worsened her symptoms. (Tr. 1088) In April 2022, Ms. [H.] reported no improvement with Medrol Dosepak. (Tr. 903).

(Doc. 14, pp. 12–13). Plaintiff argues that "[d]espite this evidence, the ALJ erred by failing to limit Ms. [H.] to occasional reaching in all directions with right upper extremity. Ms. [H.] did not testify that she could reach, on a frequent basis, and no physician opined this limitation." (Doc. 14, p. 14). In response, the Commissioner

argues that the ALJ did, in fact, recognize the impairments that Plaintiff suffers and her corresponding limitations, and incorporated those into the RFC. The Commissioner's argument is well taken.

As required, the ALJ evaluated the medical opinions to determine how persuasive he found them. 20 C.F.R. § 404.1520c(b). Of the medical opinions contained in the record, the ALJ found the state medical consultant Dr. Ethel Hooper's[3] medical opinion to be the most persuasive. (Tr. 28). The ALJ reasoned that limiting Tina H. to light work, as Dr. Hooper had opined, was "consistent with the totality of medical evidence of record" that showed her reported complaints of pain and the conservative treatment she received. (*Id.*). Dr. Hooper's evaluation is also more recent in time compared to some of the other evaluations performed, such as Plaintiff's treating orthopedist Dr. Mark Rackish who, two years prior to Dr. Hooper's opinion, had opined that the Plaintiff was unable to work.[4] (*Id.*). Importantly, the ALJ also did not merely "rubber stamp" Dr. Hooper's opinion. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ

---

[3] Dr. Hooper's opinion was reconsidered by Dr. Chankun Chung, another state medical consultant, three months later, and Dr. Chung reached the same conclusions and affirmed Dr. Hooper's RFC opinion. (Tr. 88). The ALJ found both opinions to be partially persuasive. (Tr. 28).

[4] To be clear, the age of the report was not the grounds for finding the opinion unpersuasive; instead, the ALJ found it to be unpersuasive because it did not include any functional limitations and was intended to be a temporary opinion. (Tr. 28).

considered additional evidence, such as an MRI of Tina H.'s cervical spine taken in October 2022, which showed "mild multilevel disc degeneration with mild central and right neural foraminal stenosis at C5-6." (Tr. 28; citing Tr. 1214). As a result of this, the ALJ decided to impose *additional* limitations regarding pushing and/or pulling and reaching in other directions, which neither Dr. Hooper (*see* Tr. 76–78) nor Dr. Chung (*see* Tr. 85–88) had deemed necessary. (Tr. 24, 28).

As discussed *supra*, the RFC determination is an administrative finding, not a medical one, that is reserved to the ALJ. *Varela v. Kijakazi*, No. 4:21-CV-25, 2022 WL 972534, at *6 (M.D. Pa. Mar. 30, 2022). The ALJ must independently formulate the RFC based on the entire record. Here, ALJ Tranguch reviewed each part of the record and explained why he found Drs. Hooper and Chung's opinions to be the most persuasive. The Court should defer to the ALJ's determination when there is adequate evidentiary support, as there is here. *Id.* at *7.

Additionally, Plaintiff cites to her own assertions that she is unable to work because of her chronic pain and weakness in her arm. (Doc. 14, p. 13, citing Tr. 263). She references almost exclusively her own testimony, including the hearing testimony and forms she completed in association with social security paperwork. (*See, e.g.*, Tr. 47–65; 263–73). However, while the ALJ must carefully consider the symptoms described by the plaintiff, the ALJ is not required to credit them. *Daniela B. v. O'Malley*, No. 23-CV-1939, 2024 WL 3086250, at *5 (E.D. Pa. June

20, 2024) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011)). The ALJ is responsible for determining a claimant's credibility, and such findings must be accorded "great weight and deference." *Norris v. Kijakazi*, No. 21-CV-2524, 2023 WL 3674308, at *16 (E.D. Pa. May 25, 2023) (internal citation omitted). Therefore, Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because it does not include Tina H.'s subjective complaints fails. Although the ALJ found that the claimant's medically determinable impairments could be expected to cause the alleged symptoms, claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence of record. (Tr. 25). The ALJ recognized Plaintiff's physical impairments but, again, was not required to find that her subjective complaints were consistent with those impairments. The ALJ properly evaluated the evidence presented and incorporated appropriate limitations into the RFC. The fact that he did not find that Plaintiff was as impaired as she alleges does not mean he erred, and his thorough analysis of the record shows that substantial evidence supports his finding.

The Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because no physician opined that Tina H. could reach occasionally in all directions with her right upper extremity. Plaintiff relies on the Seventh Circuit's decision in *Garcia v. Colvin* for the proposition that an RFC is

18

flawed if there is no substantiating medical records or physician testimony to support it. (Doc. 14, p. 14) (citing *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013)). In that case, the claimant, who suffered from liver cirrhosis, hepatitis C, a hernia, and low platelet count, was "in awful shape," to the point that the appellate court was "astonished" that both the ALJ and district court judge could find him capable of full-time employment. *Garcia*, 741 F.3d at 759–60. Despite the fact that both doctors who had examined the claimant opined he could *not* maintain full-time employment, the ALJ determined that the claimant possessed the RFC to perform sedentary work that was simple and repetitive, even though no physician testified and no medical records showed he had that ability. *Id.* at 762. In arriving at that RFC, the ALJ erroneously over-emphasized the claimant's physical abilities, such as his ability to stand and walk, although "Garcia's ailments [were] unrelated to his musculoskeletal system and sense of balance." *Id.* at 761. In remanding the case, the Seventh Circuit cited to the fact that that no evidence, such as physician testimony or medical records, supported the notion that Garcia was able to perform simple, repetitive sedentary work. *Id.* at 762.

Considering the facts of *Garcia*, the Plaintiff's proposition – that an RFC limitation fails if there is no physician that "opined this limitation" – is an overbroad characterization of Judge Richard Posner's opinion in that case. (Doc. 14, p. 14). "There is a critical difference between cases where an ALJ who finds

that a claimant is not disabled when all of the medical opinions indicate that the claimant is disabled and cases where the ALJ assesses the RFC that falls between competing opinions." *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). Regardless, as the Defendant correctly points out, there was testimony by the state consultants, Drs. Hooper and Chung, who found that the Plaintiff could reach overhead, (*see* Tr. 77 and 86), such that "Plaintiff's assertion that no physician opined that Plaintiff could frequently reach is not entirely accurate." (Doc. 18, p. 22).

Additionally, the Third Circuit has instructed that the ALJ may consider various opinions to establish an RFC. In *Chandler v. Comm'r of Soc. Sec.*, the claimant argued that the ALJ erred by applying his own lay opinion to the RFC which was "extrapolated from the medical opinion he obtained" from the state consultants. 667 F.3d at 362. The Court disagreed with that argument, holding that "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Id.* The ALJ must consider State consultant reports and treating physicians' reports in reaching the RFC, but "the regulations do not *require* ALJs to seek outside expert assistance." *Id.* (emphasis added). Therefore, Plaintiff's argument that the RFC fails because no physician opined that Tina H. was unable to reach on a regular basis is without merit, as the law is clear that it is within the ALJ's purview to

20

reach such a conclusion based on the evidence of record. As this Court has previously stated:

> [Claimant's]'s argument [that the ALJ relied on her own lay opinion as the basis for the RFC finding] is contrary to the controlling regulations and pertinent Third Circuit precedent. Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC. The controlling regulations are explicit that the formulation of a claimant's RFC from the broad record before him is an administrative responsibility for the ALJ, not a treating or other physician. . . . An ALJ, therefore, "is not limited to choosing between competing opinions in the record, and may instead develop his own." *Glass v. Colvin*, Civil Action No. 14-237-E, 2015 WL 5732175, at *1 n.1 (W.D. Pa. Sept. 30, 2015).

*Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019)

### B. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Symptoms.

The Plaintiff also argues that the ALJ mischaracterized the record by finding that the notes showed "mild physical examination findings" (Tr. 30) and that the treatment was "conservative" (*Id.*); in actuality, Plaintiff asserts, the medical records show "significant positive objective findings" and Tina H.'s debridement and shoulder manipulation under anesthesia are not conservative procedures. (Doc. 14, pp. 15–16). Plaintiff states that because of these supposed mischaracterizations, substantial evidence does not support the ALJ's symptom evaluation.

The issue is not whether Plaintiff disagrees with the ALJ's characterization, but rather whether there was a reasoned explanation behind the ALJ's evaluation of the claimant's subjective complaints. *Jennifer B. v. Kijakazi*, No. 1:20-CV-

20364, 2022 WL 577960, at *15 (D.N.J. Feb. 25, 2022) ("[T]he Court finds that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference."). While Plaintiff may disagree that there were only "mild physical examination findings," after reviewing the factual findings of the ALJ, it is clear that his opinion is supported by substantial evidence and is therefore entitled to deference.[5] *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 321 (3d Cir. 2004)

The ALJ engaged in a lengthy discussion spanning several pages discussing the numerous medical appointments that Tina H. had over the course of several years, including the doctors' reports, the results of procedures and studies, treatments, and Plaintiff's reported activities. For example, the ALJ went through the MRI studies and described how an MRI arthrogram from May 2020 revealed no obvious rotator cuff tear (Tr. 25), an MRI from April 2022 showed no significant disc disease, canal stenosis, or neural foraminal narrowing, (Tr. 27), and an MRI in May 2022 of her right brachial plexus was unremarkable. (*Id.*). An MRI from October 18, 2022, showed mild multilevel disc degeneration with mild central and right neural foraminal stenosis at C5-6. (*Id.*). As for x-rays, the initial

---

[5] Indeed, "[o]verturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety & Health Rev. Comm'n*, 532 F. App'x 309, 312 (3d Cir. 2013).

x-ray in February 2020 immediately after she was pulled down by her dog on the alleged onset date showed no fracture or other acute abnormality in her right shoulder. (Tr. 25). An x-ray from June 2020 of her cervical spine showed spondylolisthesis C3-C4 through C6-C7 with motion; mild cervical thoracic of posterior; and spondylosis, particularly T4-T5 and T5-T6, where it was mild to moderate. (Tr. 26). An x-ray from March 2022 showed no fracture or dislocation in her shoulder, normal alignment of the acromioclavicular and glenohumeral joints, and unremarkable soft tissue. And an x-ray from June 2022 showed mild elevation of the distal clavicle in relation to the acromioclavicular joint, but otherwise no acute fracture or dislocation and unremarkable soft tissue. (Tr. 27). Overall, substantial evidence supports the ALJ's conclusion that the examination findings were, overall, mild. (Tr. 30).

The Plaintiff also contends that the ALJ erred in not considering Tina H.'s work history when evaluating her subjective allegations, and that the fact that she had maintained consistent employment should have bolstered her subjective allegations of the symptoms. (Doc. 14, pp. 16–17). "The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not 'explicitly discuss his years of uninterrupted employment[,]' but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints." *Vilma G. v. Kijakazi*, No.

2:21-CV-1402, 2022 WL 1451567, at *10 (D.N.J. May 9, 2022) (citing *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015)). The ALJ here discussed why other evidence, including the physical examinations, treatment, and her daily activities, undermined Tina H.'s subjective complaints. The ALJ thoroughly discussed the evidence in a comprehensive and analytical manner, and included sufficient statements of facts on which he based his ultimate conclusions. *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)). The ALJ's RFC determination was clearly articulated and supported by the evidence, and is not subject to remand.

## V.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be affirmed. An appropriate order follows.

**Dated:** March 16, 2026              <u>*s/ Leo A. Latella*</u>
**LEO A. LATELLA**
**United States Magistrate Judge**

24